```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JOSE MANUEL URENA,            :
                              :
            Petitioner,       :    No. 99 Cr. 0073 (JFK)
                              :        Opinion and Order
     - against -              :
                              :
UNITED STATES OF AMERICA,     :
                              :
            Respondent.       :
------------------------------X
```

APPEARANCES:

    For Petitioner:
        Henry E. Mazurek
        521 Fifth Avenue, Suite 3300
        New York, New York 10175

    For Respondent:
        Preet Bharara
        U.S. Attorney for the Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007
            Of Counsel:  Brian R. Blais

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Petitioner Jose Manuel Urena's ("Urena" or "Petitioner") motion pursuant to Rule 36 of the Federal Rules of Criminal Procedure to modify his judgment, or alternately, for relief under the All Writs Act.  Urena seeks correction of his status as a career offender based on recently obtained state court records which clarify that two prior arrests were in fact consolidated for sentencing.  Each of these requests is denied.

                        **I.   BACKGROUND**

    Following a jury trial before the late Honorable Allen G.

Schwartz, on February 22, 2000, Urena was convicted of conspiracy to distribute cocaine, cocaine base, and heroin in violation of 21 U.S.C. § 846.  After several adjournments, in part granted to clarify the very issue now raised, Judge Schwartz sentenced Urena on February 14, 2001.[1]

The Probation Department prepared a Pre-Sentence Report ("PSR") dated May 16, 2000, with an addendum dated October 5, 2000, using the May 2000 version of the United States Sentencing Commission Guidelines Manual ("U.S.S.G.").  The PSR reported that Urena had three prior narcotics-related convictions.[2]  First, Urena was arrested on July 2, 1996 after police observed him exchange small white glassine envelopes of heroin for money on school grounds.  (PSR ¶¶ 195-97).  On June 10, 1997, Urena was convicted of criminal sale of a controlled substance in the third degree; he received a youthful offender adjudication in New York County Supreme Court and was sentenced to one year in prison.  (Id.).  Second, the PSR advised that Urena was arrested on August 15, 1996 after he sold heroin to an undercover police officer.  (PSR ¶¶ 198-200).  On June 18, 1997, Urena was convicted of criminal sale of a controlled substance in the

---

[1] The case was reassigned to this Court for any post-conviction matters after Judge Schwartz passed away.
[2] Urena has two additional New York Criminal Court convictions: on April 9, 1996, he was convicted as a youthful offender of attempted auto stripping and received a conditional discharge; on September 11, 1996, he was convicted of criminal facilitation in the fourth degree and received a $50 fine.  (PSR ¶¶ 191-94).

third degree in New York County Supreme Court and sentenced to one to three years in prison. (Id.). Finally, the PSR stated that Urena was arrested on August 19, 1996 after he sold heroin to an undercover police officer on school grounds. (PSR ¶¶ 201-02). On October 15, 1998, he was convicted of attempted criminal sale of a controlled substance in the third degree, and was sentenced to time served. (Id.). Urena was born in February of 1978, and therefore he was eighteen years old at the time of each of these offenses.

At sentencing, defense counsel argued that the August 15 and 19, 1996 cases had been consolidated, but that he had not yet obtained records from the state court to confirm this fact. Since the case had been pending for two years at that point, Judge Schwartz elected to go forward with sentencing, but stated that "if it turns out that I'm in error, you can certainly bring that matter before me. And I'm prepared to reopen a record if I operated on some basis that was not correct." (Feb. 14, 2001 Sentencing Tr. at 5).[3] Judge Schwartz then determined that

> [Urena] has two felony convictions in August of 1996.
> The evidence on this record indicates that the

---

[3] Judge Schwartz went on to say that "the defendant had at least an obligation to show some basis for what he's suggesting, that is, the two cases are really one case, and should be treated as one case . . . . You can wait for the papers. If it turns out that something there is completely different from what I'm suggesting today, then you'll bring that to our attention. And if it's in fact the case, we'll consider it." (Feb. 14, 2001 Sentencing Tr. at 7).

>  defendant was involved in two separate and unrelated
>  criminal matters; that he was sentenced separately on
>  these two matters; that the second sentence that he
>  received, which occurred . . . two years and two
>  months after the arrest, . . . was not either treated
>  with, treated as a concurrent sentence or consolidated
>  or in any way treated by the Court as one matter with
>  an earlier conviction.  Therefore, since they are two
>  separate matters, two unrelated arrests, and what
>  appears to be two separate sentences, each of those
>  felonies is now of record.  The fact that the
>  defendant has two felony convictions places him in the
>  category of a career offender.

(Id. at 36-37).

As reported in the PSR, the base offense level for a violation of 21 U.S.C. § 846 is thirty-two.  (PSR ¶ 178).  The Probation Department recommended, and Judge Schwartz applied, a three level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(b) since Urena played a managerial role in an offense involving more than five participants.  (PSR ¶ 181; Feb. 14, 2001 Sentencing Tr. at 34).  Probation also recommended, and Judge Schwartz applied, a two-level career offender enhancement pursuant to U.S.S.G. § 4B1.1 on the basis of the August 15, 1996 criminal sale of a controlled substance and the August 19, 1996 attempted criminal sale of a controlled substance.  (PSR ¶ 186; Feb. 14, 2001 Sentencing Tr. at 36-37).  Judge Schwartz explicitly relied on the two August 1996 cases in determining that Urena was a career offender, noting that "I count . . . five convictions, at least two of which are clear felonies, and maybe [a] third is also a felony.  But, in any event, I'm not

making any determination on youthful offender status." (Feb. 14, 2001 Sentencing Tr. at 41).

The PSR assessed nine criminal history points for Urena's five prior convictions, then added two points because Urena was on parole at the time of the instant offense, and one additional point because the offense was committed less than two years after his release from custody for the June 18, 1997 criminal sale of a controlled substance conviction. (PSR ¶¶ 203-05). Twelve criminal history points resulted in a criminal history category of V; Urena received an automatic enhancement to criminal history category VI because Judge Schwartz determined that he was a career offender. Based on a total offense level of 37, and a criminal history category of VI, the Sentencing Guidelines dictated a sentence between 360 months and life in prison. Urena also faced a mandatory minimum sentence of 240 months. 21 U.S.C. § 846(b)(1)(A). However, taking into consideration Urena's youth, the fact that he had two young children, the fact that he participated in small quantity heroin transactions, and the fact that a co-defendant received a sentence substantially below Urena's Guidelines range, Judge Schwartz determined that a category of VI overstated the seriousness of Urena's criminal history. (Feb. 14, 2001 Sentencing Tr. at 44-45). Therefore, Judge Schwartz granted Urena a downward departure, effectively deducting the career

offender enhancements, and finding that the appropriate total offense level was 35 with a criminal history category of V. (Feb. 16, 2001 Judgment at 7).  Judge Schwartz specifically noted that, independent of any career offender status, Urena had "been repeatedly involved in criminal activity involving narcotics, and I think he's not, therefore, entitled to the minimum under the Guidelines, but to some greater sentence." (Feb. 14, 2001 Sentencing Tr. at 47).  Urena was sentenced to 270 months in prison and ten years of supervised release.[4]  (Feb. 14, 2001 Sentencing Tr. at 47).  The Court of Appeals for the Second Circuit affirmed the conviction and sentence, United States v. Arroyo, 31 F. App'x 9 (2d Cir. 2002), and the United States Supreme Court denied Urena's petition for a writ of certiorari on June 28, 2002.  Urena v. United States, 536 U.S. 969 (2002).  Urena's July 14, 2003 petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 was denied as untimely.  Urena v. United States, No. 03 Civ. 6722, 2005 WL 1653888, at *3 (S.D.N.Y. July 13, 2005).

Sometime after sentencing in this matter, Urena received the transcript of his October 15, 1998 sentencing in New York Supreme Court.  Although the minutes are not as explicit as one

---

[4] At the time when Urena was sentenced, prior to the Supreme Court's 2005 opinions in United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005), the Sentencing Guidelines were mandatory.

6

might hope, Judge Edward McLaughlin stated:

> I should have had two of your cases in June of '97. I only had one of them. So you, me, the lawyer, the DA in the courtroom, we're now going to go back to June of '97. We all get to stay here but we're going to go mentally back. When I take the plea [for the attempted criminal sale of a controlled substance on August 19, 1996], when I impose the one to three, then we'll come forward again and you will have served one to three without having to do a day in jail.

(Oct. 15, 1998 Sentencing Tr. at 2). Urena subsequently filed a motion in New York State Supreme Court dated June 21, 2004 seeking clarification of the October 15, 1998 sentencing proceedings. In response to that motion, New York County Assistant District Attorney Craig Ascher filed an affirmation dated August 24, 2004 which explained that: (1) Urena's August 19, 1996 arrest related to events that occurred on that day; (2) although Urena was involved in a heroin sale on August 15, 1996, he was not arrested for that conduct until December 4, 1996; and (3) it appeared that these two cases were in fact consolidated nunc pro tunc. (Ascher Aff. at ¶¶ 7-8). As far as the Court can discern, Urena received a copy of this affirmation in 2004, but waited almost six years to file the instant motion.

Under the applicable version of the Sentencing Guidelines, sentences imposed in related cases are treated as one sentence in calculating a defendant's criminal history. U.S.S.G. § 4A1.2(a)(2). "Prior sentences are not considered related if they were for offenses that were separated by an intervening

7

arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that . . . were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 app. n.3.  Since it is now clear that Urena was arrested for the August 15, 1996 heroin sale on December 4, 1996, <u>after</u> he committed the August 19, 1996 offense, there is no intervening arrest between the August 15th conduct and the August 19th conduct; the PSR should have reflected the fact that these two cases were related for Guidelines purposes.

Based on this information, both parties agree that Judge Schwartz erred in his determination that what the PSR labeled as the August 15 and 19, 1996 arrests triggered the career offender enhancement.  Urena now moves pursuant to Rule 36 of the Federal Rules of Criminal Procedure or the All Writs Act to correct the Guidelines calculation in his judgment as contemplated by Judge Schwartz.  Although Urena characterizes the motion as seeking "limited redress," it is clear that his ultimate goal is to be resentenced.  Thus, the issues to be determined are whether this Court has the authority to correct the judgment and re-open the sentencing hearing after more than nine years, and whether such action is necessary.

## II.  DISCUSSION

### A.  Rule 36

Rule 36 of the Federal Rules of Criminal Procedure provides in full: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."  A clerical error is "minor [or] uncontroversial," United States v. Werber, 51 F.3d 342, 347 (2d Cir. 1995), an error "of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature," amounting to little more than "substituting a right number for a wrong number." United States v. Burd, 86 F.3d 285, 288 (2d Cir. 1996) (citation omitted).  "Rule 36 authorizes a district judge, at any time, to amend the written judgment so that it conforms with the oral sentence pronounced by the court.  What Rule 36 does not permit, however, is amendment of the oral sentence itself."  Werber, 51 F.3d at 347.  To that end, "Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of 'errors made by the court itself.'"  Id. (quoting United States v. Daddino, 5 F.3d 262, 264 (7th Cir. 1993)).  Indeed, the court may not use Rule 36 to conform a judgment to its intended sentence, "even where the record gave some indication of the district court's intent if 'it is clear that the court took no action to effectuate any such intent.'"  United States v. Lansing, 71 F. App'x 84, 87 (2d Cir. 2003) (quoting Werber, 51 F.3d at 347).

9

The error Petitioner has uncovered is more than a clerical mistake. It is not the case, for example, that Judge Schwartz verbally announced a total offense level of 35 but mistakenly recorded an offense level of 37 in the judgment. Instead, the PSR incorrectly chronicled Petitioner's criminal history, and Judge Schwartz in turn relied on the erroneous PSR in fashioning Petitioner's sentence; thus, Petitioner seeks to correct Judge Schwartz's legal determination that he was a career offender. Moreover, it is telling that Petitioner's aim is not simply to update the written judgment, but to re-open his sentencing hearing so that a new sentence may be imposed in accordance with the "corrected" judgment. This type of change to "the internal structure of the sentence" is beyond the scope of Rule 36. Burd, 86 F.3d at 288.

It is true that Judge Schwartz indicated on the record some willingness to revisit his sentence if in fact the two challenged state cases had been consolidated. However, Judge Schwartz noted that Petitioner and his counsel had had ample time to submit proof of the consolidation but failed to do so, and he further explained that he had independently investigated Petitioner's criminal history and was ready to proceed with sentence. See Feb. 14, 2001 Sentencing Tr. at 5-6. Judge Schwartz apparently was satisfied with the record before him, and made no effort to effectuate any intent to further explore

10

Petitioner's career offender status, for example, by granting an adjournment of the sentencing. Therefore, this Court finds that it would not be appropriate to use Rule 36 in an attempt to sentence Petitioner as Petitioner claims Judge Schwartz may have intended.

### B.   The All Writs Act

Alternatively, Petitioner seeks relief under the All Writs Act, 28 U.S.C. § 1651(a), for a writ of error coram nobis or a writ of audita querela.

#### 1.   Coram Nobis

"Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam); see Porcelli v. United States, 404 F.3d 157, 158 (2d Cir. 2005). A writ of error coram nobis may be used to bring to the court's attention "factual errors 'material to the validity and regularity of the legal proceeding itself.'" United States v. Persico, No. 99 Civ. 4291, 2000 WL 145750, at *4 (S.D.N.Y. Feb. 7, 2000) (quoting Carlisle v. United States, 517 U.S. 416, 428 (1996)). In order to obtain coram nobis relief, a petitioner must demonstrate:  "'1) there are circumstances compelling such action to achieve justice, 2) sound reasons

11

exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from this conviction that may be remedied by granting of the writ.'" Fleming, 146 F.3d at 90 (quoting Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996)).

   None of the circumstances justifying such extraordinary relief are present here.  Petitioner does not challenge the validity of his conviction in any way.  He pursued review on direct appeal and through a petition for habeas corpus, but both attempts were unsuccessful.  He has known about the consolidation of the two August 1996 state arrests since his sentencing in 1998, and gave no reason for the long delay in obtaining state court records and filing this motion after the records were received in 2004.  Furthermore, Petitioner is still incarcerated and has not suffered any collateral consequences from his conviction.  Cf. United States v. Mandanici, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring) ("An important difference between habeas relief and coram nobis lies in the fact that, because the latter comes after the petitioner has completed his sentence, the petitioner will not be retried; thus, the granting of coram nobis normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged."); Eubanks v. United States, No. 97 Civ.

3891, 2008 WL 3200162, at *5 (S.D.N.Y. Aug. 7, 2008) ("Because Petitioner is currently serving his sentence, and has not indicated a concrete threat of serious harm from any legal consequences of his conviction, coram nobis cannot be granted."). Therefore, coram nobis relief is not available.

### 2. Audita Querela

The writ of audita querela "is probably available where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy." United States v. Richter, 510 F.3d 103, 104 (2d Cir. 2007) (per curiam) (citation omitted). The writ functions as a gap-filler and "might be deemed available if [its] existence were necessary to avoid serious questions as to the constitutional validity of both § 2255 and § 2244 – if, for example, an actually innocent prisoner were barred from making a previously unavailable claim under § 2241 as well as § 2255." Triestman v. United States, 124 F.3d 361, 380 n.24 (2d Cir. 1997).

The objection to Petitioner's career offender determination was made prior to and during sentencing. Petitioner had the opportunity to file a motion pursuant to 28 U.S.C. § 2255 to attack the validity of his sentence, and that petition was denied as untimely. Petitioner moved for reconsideration of the

13

denial of his habeas petition in federal court, and such relief was similarly denied in 2007. The Second Circuit declined to issue a certificate of appealability as to the habeas denial on February 7, 2008. The only thing that occurred subsequent to his conviction and sentence is that he obtained a transcript of state court proceedings that occurred in 1998. Petitioner's multiple attempts to secure judicial review of his sentence, premised on information that he has known since 1998, indicate that numerous post-conviction remedies, including habeas corpus, were available to him.

Petitioner claims that "a manifest injustice would be done if [he] continues to be imprisoned under a sentence in which the district court erroneously rendered him a career offender, only because of a lack of state records at the time." (Reply Br. at 18). However, on the basis of a number of factors, Judge Schwartz granted a downward departure from the Guidelines recommendation, counterbalancing the career criminal finding by decreasing Petitioner's offense level from thirty-seven to thirty-five and decreasing Petitioner's criminal history calculation from level VI to V. These reductions yielded a Guidelines range of 262 to 327 months, and Petitioner was sentenced near the bottom of that range, to 270 months. This Court cannot speculate whether Judge Schwartz would have granted a downward departure absent Petitioner's career offender status.

In the end, the career offender enhancement was not determinative of Petitioner's sentence, and therefore does not rise to the level of manifest injustice nor does this situation call into question the constitutionality of § 2255 or § 2244.

### C.   Career Offender Determination

Setting aside the fact that there appears to be no procedural vehicle by which this Court could re-open Petitioner's sentencing, such re-opening is unnecessary because Judge Schwartz's career offender finding is supported by an additional controlled substance conviction of record.

At the time Petitioner was sentenced, the Guidelines defined a career offender as a defendant who is at least eighteen years old and "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Prior felony convictions include convictions for offenses committed at age eighteen or older that are punishable by a term of imprisonment exceeding one year. U.S.S.G. § 4B1.2 app. n.1. A district court may "consider youthful offender adjudications when calculating the number of 'prior felony convictions of either a crime of violence or a controlled substance offense'" under § 4B1.1 of the Sentencing Guidelines. United States v. Parnell, 524 F.3d 166, 171 (2d Cir. 2008) (per curiam); see also United States v. Jean, No. 04 Cr. 424, 2006 WL 3316836, at *4 (S.D.N.Y. Nov. 13,

15

2006) (adding "two criminal history points, pursuant to U.S.S.G. §§ 4B1.1(b) and 4B1.2(d)(2)(A)" for a prior youthful offender adjudication for which defendant served one year in prison).

In determining whether to count youthful offender adjudications as prior felony convictions for the purpose of a career offender enhancement, the Court evaluates the nature and substance of the prior proceeding, including the forum in which the defendant was tried and convicted, the sentence received, and the type of facility in which the defendant served his sentence.  See United States v. Jones, 415 F.3d 256, 264 (2d Cir. 2005); cf. United States v. Driskell, 277 F.3d 150, 151 (2d Cir. 2002) ("[T]he district court should examine the nature of this prior proceeding, the sentence received and actually served, and where the defendant was incarcerated" in determining whether a youthful offender adjudication should be included in a criminal history calculation).  Here, Petitioner was arrested on July 2, 1996, and he pleaded guilty to criminal sale of a controlled substance in the third degree.  Criminal sale of a controlled substance in the third degree is a class B felony under New York law and is punishable by a maximum term of imprisonment of twenty-five years.  N.Y. Penal Law § 220.39.  At the time of his arrest, Petitioner was eighteen years old. Petitioner was subsequently adjudicated a youthful offender in New York County Supreme Court, an adult court.  He was sentenced

16

to a year imprisonment which he served, concurrently with another adult sentence, in adult prison. These factors suggest that Petitioner's July 2, 1996 arrest and resulting youthful offender adjudication may be properly considered a prior felony conviction of a controlled substance offense. Therefore, even though Judge Schwartz relied on an erroneous PSR, the career offender determination is independently supported by a third controlled substance conviction.[5]

---

[5] The Court notes that Petitioner's criminal history calculation was overstated by at least two points as the consolidated cases do not separately score. However, since the career offender determination was not erroneous, this Court need not consider Petitioner's newly raised challenges to his criminal history calculation. See U.S.S.G. § 4B1.1 ("A career offender's criminal history category in every case shall be Category VI."). This Court is not in a position to speculate that Judge Schwartz may have further departed from the Guidelines had he been operating with knowledge of the correct criminal history.

### III. CONCLUSION

For the aforementioned reasons, Petitioner's requests for relief under Rule 36 of the Federal Rules of Criminal Procedure, and in the alternative, under the All Writs Act, are denied.

**SO ORDERED.**

Dated:   New York, New York
         November 29, 2010

					_____
					**John F. Keenan**
					**United States District Judge**